UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

VS.                                    CASE NO: 2:12-cr-106-FtM-29DNF

JOHANNES WILHEIM LILLIEHOOK
_____

**OPINION AND ORDER**

    This matter came before the Court on July 9, 2014, for trial. Defendant waived his right to a jury trial in writing and in open court, the government consented, and the Court approved the waiver. The Court conducted a bench trial, which consisted of the receipt of stipulated Exhibits 1, 2, 3B, 4, 5A, 5B, 6, 7, 8, 9, 10, 11, 12, 13, and 14.  The Court denied defendant's Rule 29 motion and renewed Rule 29 motion, and heard closing argument from counsel.

    The Court's findings of fact and conclusion of law are as follows:

    1.  Defendant Johannes Wilheim Lilliehook (Lilliehook or defendant) was charged in a one-count Indictment (Doc. #1) with a violation of 18 U.S.C. § 641.  Specifically, the Indictment alleges that from in or about 1987 through in or about May 31, 2012, defendant did knowingly and willfully steal, embezzle, purloin and convert to his own use and the use of another more than $1,000 in United States Currency belonging to the Social

Security Administration and the United States of America with the intent to deprive the owner of the use and benefit of the money so taken.

2.  To support a conviction under 18 U.S.C. § 641, the United States must establish beyond a reasonable doubt that: (1) the money belonged to the government; (2) the defendant (a) stole, (b) embezzled, (c) purloined, or (d) converted the money; and (3) defendant did so knowingly and willfully with the intent to deprive the government of the money. United States v. McRee, 7 F.3d 976, 980 (11th Cir. 1993) (en banc); United States v. Moore, 504 F.3d 1345, 1348 (11th Cir. 2007).

3.  The record establishes the following material facts:

(a) Ebba Gardsten, also known as Ebba Agnes Karin Elisabet Gustafsdotter, (Ms. Gardsten) was a citizen of Sweden born on September 19, 1909.  Ms. Gardsten died in Sweden on May 16, 1987. Exhibit 3B.

(b) Ms. Gardsten had worked in the United States and paid into the United States Social Security system, thus becoming eligible for Social Security Retirement Benefits.

(c) Ms. Gardsten applied for Social Security Retirement Benefits from the Social Security Administration (SSA) in 1974, Exhibit 1, and began receiving them in about June 1976.  At the time of her death in May 1987, these benefits were being deposited directly into a Sun Bank (now SunTrust Bank) account she co-owned

with her son, defendant Johannes Wilheim Lilliehook (the SunTrust Bank account). The stipulated facts, Exhibit 12, refer to the SunTrust Bank account being both jointly owned and co-owned, and the bank records, Exhibit 5B, reflect that the account was in the name of Ms. Gardsten "or" defendant.

(d) Ms. Gardsten's Social Security Retirement Benefits should have ceased upon her death. Exhibit 8.

(e) Because Ms. Gardsten died in Sweden, the SSA did not receive notice of her death, which in the United States is usually provided by the funeral home. The SSA continued to make the direct deposits of these social security benefits into the SunTrust Bank account for the next twenty-five years. Each year from 1987 through 2012, the SSA provided a 1099 income statement addressed to Ms. Gardsten at an address in Cape Coral, Florida which defendant asserted on income tax returns was his residence.

(f) Defendant Lilliehook was born in Sweden. The parties have stipulated that he entered the United States on March 25, 2008, as an "E39" spouse of a skilled worker, and became a lawful permanent resident of the United States on September 7, 2010. Exhibit 12. Tax returns establish that defendant filed U.S. income tax returns from 1987 through 2012, during which time he identified the Cape Coral address as his residence. Defendant did not declare any money taken from the SunTrust Bank account as income.

(g) Defendant was the co-owner of the SunTrust account, and after his mother's death was the only person with access to the monies in the account. With one minor exception, all the monies deposited into the account were the Social Security Retirement Benefits intended for Ms. Gardsten. During the years after his mother's death, defendant removed money from this account by writing checks or making ATM withdrawals. Exhibits 5B, 6.

(h) On May 16, 2012, pursuant to a periodic review of its records, the SSA sent a letter to Ms. Gardsten at the Cape Coral address requesting that she call a particular SSA Technical Expert to discuss her continuing eligibility to receive Social Security Retirement Benefits. Exhibit 2.

(i) As a result of the letter, defendant obtained legal counsel, who contacted the SSA. Counsel advised the SSA that Ms. Gardsten had died in 1987, and offered to repay all amounts improperly paid by the SSA. The SSA stopped the direct deposit payments after the June 2012 deposit. Ms. Gardsten's name was removed from the account in 2013.

(j) Although the actual amount of the overpayments is unclear from the SSA records, Exhibits 4, 8, the SSA told defendant that he owed $70,744.00 due to the overpayments. Exhibit 8. Defendant paid this amount in September 2013, Exhibit 11, and the SSA sent him a letter confirming that there was a "$0.00" balance due. Exhibit 13.

4.   The Court finds beyond a reasonable doubt that the United States has proven that the money placed into the SunTrust Bank account after June 1987, was the property of the United States and the Social Security Administration, an agency of the United States. The record establishes that these retirement benefits were not due to Ms. Gardsten for the month of her death or for any time thereafter.  Exhibit 8.  See also 42 U.S.C. § 402.

5.   The Court also finds beyond a reasonable doubt that after June 1987, defendant took some of the monies which had been direct deposited into the SunTrust Bank account.  Whether this constitutes stealing, embezzling, purloining, or converting depends on defendant's knowledge and intent, discussed below.

6.   The Indictment charges that defendant "knowingly and willfully" committed the acts "with the intent to deprive" the SSA and United States of the money. (Doc. #1.)  The Court finds that the government has not established this element beyond a reasonable doubt.

(a)  The evidence is clear that for over ten years (beginning with receipt of benefits in 1976 and continuing until May 1987), the money was properly deposited into the SunTrust Bank account and, since the account was titled to both Ms. Gardsten "or" defendant, either could lawfully use the deposited amounts.

(b)  The bank records establish that defendant knew that the source of these deposits was the SSA, but the record is silent as

to the specifics of defendant's knowledge of the nature of the benefits or the basis for them.  There is no evidence that defendant was involved with his mother's SSA application in 1974, or had any personal dealings with the SSA concerning his mother's benefits.  There is no evidence that defendant knew the funds should not have been deposited after his mother's death, and the parties have stipulated that "[t]here is no evidence to suggest that the Social Security Administration ever advised defendant Lilliehook that continued payments by the Social Security Administration of Ms. Gardsten's Social Security Retirement Benefits after her death were improper, at any time prior to their letter of May 16, 2012 . . . ."  Exhibit 12, p. 5.

(c)  Until the May 16, 2012 letter, there is no evidence that the SSA ever made any inquiries of Ms. Gardsten or defendant as to continued eligibility for the benefits.  The parties stipulate that there is no evidence "that defendant Lilliehook ever made any false statements or representations to anyone at the Social Security Administration about Ms. Gardsten or her Social Security Retirement Benefits . . . ."  Exhibit 12, p. 5.  Further, it is stipulated that there is no evidence that defendant ever took "any affirmative action to hide or conceal the continued receipt of Ms. Gardsten's Social Security Retirement Benefits."  Exhibit 12, p. 5.

(d)  The government must prove beyond a reasonable doubt that defendant knew the funds in the SunTrust Bank account belonged to the government when he used the funds for his own purposes after his mother's death.  Moore, 504 F.3d at 1348.  While the Court has found there is sufficient evidence to survive the Rule 29 motion, the Court concludes that the government's proof fails to establish beyond a reasonable doubt that defendant knew he was not entitled to keep receiving the benefits after his mother's death.  As in Moore, there was no evidence that defendant was notified he was not entitled to keep receiving the benefits after his mother's death, and no evidence that he was required to notify the SSA of her death.  No evidence similar to that in United States v. Morris, 284 F. App'x 762, 763-64 (11th Cir. 2008), is present in this case. While it is certainly true that the required knowledge and intent may be inferred from circumstantial evidence, United States v. Townsend, 515 F. App'x 869, 871 (11th Cir. 2013), the circumstances in this case fail to support such a factual finding.

(e)  Two stipulated facts potentially bear on defendant's knowledge.  The SSA sent Form 1099 income statements to Ms. Gardsten for years long after she had died.  A reasonable person may have wondered how a dead person could continue to earn income. Additionally, the imposition of the alien tax for certain years may suggest that someone told the SSA that Ms. Gardsten was out of the country (literally true perhaps, but at the very least

misleading).  Neither of these are linked to defendant, and the Court finds they do not elevate the government's proof to the required beyond a reasonable doubt.

(f)   Because the government has not established the required knowledge and intent beyond a reasonable doubt, defendant is adjudicated "not guilty".

Accordingly, it is hereby

**ORDERED:**

Defendant Johannes Wilheim Lilliehook is adjudicated **NOT GUILTY** of the charge set forth in the Indictment (Doc. #1) in this case.  The Order Setting Conditions of Release (Doc. #11) is vacated, and defendant is released from restrictions related to this case.  The Clerk of the Court shall enter judgment accordingly.

**DONE and ORDERED** at Fort Myers, Florida, this ___11th___ day of July, 2014.

*[signature: John E. Steele]*
JOHN E. STEELE
UNITED STATES DISTRICT JUDGE

Copies:

Counsel of Record